IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

Civil Action No. 02-CV-00061

RODNEY MARVIN LIBER, as wrongful death
representative for the Estate of Samantha Rose
Liber, CARLA LIBER, an individual, and AVA
LIBER, an individual,

    Plaintiffs,

v.

EL CAPITAN ENTERPRISES, INC. a Wyoming
corporation d/b/a JACKSON HOLE ADVENTURE
RENTALS; DAVID WALTERS a/k/a DAVE
WALTERS, an individual; and TOBY JOHN
KUZNIA, an individual,

    Defendants.

---

## COMPLAINT AND JURY DEMAND

---

    COMES NOW, Rodney Marvin Liber, as Wrongful Death Representative for the Estate of Samantha Rose Liber; Carla Liber, an individual; and Ava Liber, an individual (collectively "Plaintiffs"), by and through their undersigned counsel, and for their Complaint against Defendants, state and allege as follows:

### I.     INTRODUCTION

    1.    Samantha Rose Liber ("Sami") was a radiant force of positivity whose infectious giggle and bright smile could light up any room.  Sami was defined by her deep compassion and ability to make everyone feel seen and included.  She was the child that everyone wanted to hold and to hug, who warmed the people around her with her positive and authentic soul.  Sami was a talented artist who was admired for her style and sense of humor.  Whether she was dedicating herself to her classes, her appointment as editor of the school yearbook, the cheer team, or simply being a supportive friend, she approached life with a selfless heart and an adventurous spirit.

Everyone has a Sami.

2.      In the summer of 2024, Sami had just turned sixteen, excited about getting her driver's license and the independence it would bring.  She wanted to close out her summer with a short vacation to a picturesque landscape, where she could experience nature's beauty and document her adventure in photographs, another of her passions, before returning to her junior year of high school, the most academically rigorous year yet.  After extensive research, she asked if she, her mom, and her sister could travel to Jackson, Wyoming, to enjoy the outdoors,  and the cool western-style town.

3.      This would be the Liber girls first time in Wyoming.  They had hoped to spend quality time together in a peaceful mountain town before Ava began her final year of high school and Samantha began her most challenging year of studies.  Carla knew that the time with just the girls, mother and daughter, and sister to sister, was fleeting given Ava's plans to attend college in another state.  Rod, a father who put his girls first, stayed behind to give them the "girls only trip" of their dreams, also recognizing that the bond between his girls and their mother was something to preserve and cherish.  None of them could have predicted how true these sentiments would end up being.

4.      Sami wanted to experience the picturesque Teton Mountains up close, so she asked Carla to book an ATV tour for the three of them.  Sami, Ava, and Carla had no experience on ATVs, so they chose a tour that was well-known in town and operated by experienced guides. They placed their trust and safety in the hands of a commercial outfitter, whose expertise, guidance, and legal duty to provide a safe experience suitable for beginners.

5.      Defendants El Capitan Enterprises, Inc., a Wyoming corporation d/b/a Jackson Hole Adventure Rentals ("JHAR"), is a commercial outfitter offering beginner, intermediate, and advanced ATV tours in the national forests near Jackson.  Defendant David Walters ("Walters"), is the permittee of a U.S. Forest Service Special Use Permit to conduct ATV tours in the Bridger-Teton National Forest and one of the owners of Defendant JHAR, which operates under the permit. Defendant Toby John Kuznia ("Kuznia") is an ATV tour guide working for Defendant JHAR

under Defendant Walters' permit.

6.    At the times relevant to this complaint, Defendants were experienced in ATV guiding and were aware of the risks.  Defendant Walters had been in the ATV guided-tour business for at least sixteen years.  Defendant Walters had held the Forest Service permit to offer off-road, guided ATV tours for a decade.  Defendant JHAR had operated on the Shadow Mountain off-highway trail system for just as long.  On information and belief, Defendant Kuznia had guided ATV tours in Wyoming for nearly as much time.

7.    Carla Liber scheduled an ATV tour for herself, Sami, and Ava with Defendant JHAR by telephone.  When scheduling their tour, she told Defendant JHAR that they were beginners with no experience in riding ATVs.  She made this clear in person as well.

8.    Defendants made all the decisions on how the tour would proceed.  Defendants decided what ATV Sami would ride (a heavy and powerful machine mismatched to Sami's size and stature); they selected the helmet (an open face design marketed for street riding and not for off highway use); they selected how big the group would be and how many guides would be present (one guide for ten participants); they selected the order of riders (placing Sami far away from the guide who was leading the tour); they selected the amount of instruction that Sami would receive (approximately ten minutes); they selected a trail (one marked for intermediate and advanced riders, not beginners like Sami); and they selected where to start and stop along the way (not pausing where Defendant Kuznia typically does during a long descent).

9.    Despite explicit knowledge that Sami and her family were beginners, Defendants failed to provide adequate safety instruction, failed to utilize the required safety gear, and negligently led the group down "Trail 4211"—a difficult, technical, and challenging trail designated for "Advanced Riders" and known to be hazardous.  On a map published on Defendant JHAR's website and believed to be annotated by Defendant Walters, this trail was described as steep, rutted, rocky, and off camber.

10.    This map advised riders "to try [Trail 4211] uphill first" because going down is more difficult.

11.     As a consequence of the Defendants' choices from the selection of the ATV to the trail she would ride on, Sami's ATV crashed during a steep descent of Trail 4211, crushing her skull and causing fatal injuries.

12.     Sami's death was not the result of the inherent risks of ATV riding.

13.     Sami's death was the result of choices made by Defendants Walters, JHAR, and Kuznia that exposed Sami to risks that are atypical, uncharacteristic, and not intrinsic to ATV riding.

14.     This Complaint seeks to hold Defendants accountable for their neglience and for the severe emotional distress inflicted upon Sami's mother and sister, who witnessed the aftermath of their daughter and sister's fatal accident.

## II.     PARTIES

15.     Plaintiff Rodney Marvin Liber is a resident and citizen of the State of California. He is the duly appointed Wrongful Death Representative for the Estate of Samantha Rose Liber, having been appointed by the District Court of Teton County, Wyoming, in Action No. 2025-CV-19418.  He is Sami's father.

16.     Plaintiff Carla Liber is a resident and citizen of the State of California.  She is Sami's mother.

17.     Plaintiff Ava Liber is a resident and citizen of the State of California.  She is Sami's sister.

18.     Defendant El Capitan Enterprises, Inc. is a Wyoming corporation doing business as Jackson Hole Adventure Rentals.  JHAR is a powersports rental and tour guide company that offers guided ATV tours in Teton County, Wyoming.  It is organized and existing under the laws of the State of Wyoming, with its principal place of business located at 151 US Hwy 89, Alpine, WY 83128.

19.     Defendant David Walters a/k/a Dave Walters is an individual who, upon information and belief, is a citizen of the State of Wyoming.  At all times relevant hereto, Defendant Walters was an owner of Defendant JHAR and participated in the management,

supervision, and/or operation of the business.

20.     On information and belief, Defendant Walters was the sole owner of JHAR in August of 2024.

21.     On information and belief, Defendant Walters was the sole officer of JHAR in August of 2024.

22.     On information and belief, Defendant Walters was the sole director of JHAR in August of 2024.

23.     Defendant Toby John Kuznia is an individual who, upon information and belief, is a citizen of the State of Wyoming.  At all times relevant hereto, Defendant Kuznia was employed by Defendant JHAR and was acting within the course and scope of his employment as a tour guide.

### III.    JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiffs and the Defendants, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

25.     This Court has personal jurisdiction over each defendant.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because all Defendants reside in this district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, specifically in Teton County, Wyoming.

### IV.    GENERAL ALLEGATIONS

**A.    Background: The Liber Family Trip to Jackson**

27.     Sami, along with her mother Carla Liber and sister Ava Liber, traveled to Jackson, Wyoming, on or about August 4, 2024, for a mother-daughter bonding experience.

28.     The purpose of the trip was for the Liber girls to spend time together.  They wanted to go someplace to enjoy the outdoors and do an activity that got them close to nature.  ATVing was an activity that fit this bill.  They knew they were beginners and let Defendant JHAR know.

**B.    The Defendants: Walters, JHAR, and Kuznia**

29.     Defendant Walters applied for and is the permit holder of U.S. Department of

Agriculture, Forest Service Special Use Permit for Outfitting and Guiding #JAC463706.

30.     Said permit authorizes Defendant Walters to provide guided OHV tours on the designated 50" motorized trail system in the Shadow Mountain area.

31.     Defendant Walters, as an owner and manager of Defendant JHAR, was responsible for the hiring, training, and supervision of Defendant JHAR employees, including guides, and for the selection of Defendant JHAR's equipment.

32.     Consistent with these responsibilities, Walters has stated, "My wife and I are very involved in day-to-day operations" of Defendant JHAR.

33.     As the permittee of Special Use Permit #JAC463706, Defendant Walters is responsible for the activities conducted pursuant to that permit.

34.     No person or entity is permitted to conduct commercial activities on Forest Service land, such as guided ATV tours, without a valid Special Use Permit like the permit described above.

35.     Defendant JHAR is a commercial outfitter operating in Teton County.

36.     Defendant JHAR does not hold a Forest Service Permit.

37.     At all times relevant hereto, Defendant JHAR operated under the special use permit issued to Defendant Walters.

38.     Defendant JHAR markets and advertises its services to the general public through its website, https://jhadventure.com/atv-tours/.

39.     On Defendant JHAR's webpage, JHAR offers two different guided ATV tours: the "Caribou Side by Side Tour" and the "Teton Overlook ATV Tour".

40.     Defendant JHAR describes the "Caribou Side by Side Tour" as "Popular for side by side enthusiasts, our *beginner friendly* side by side tour is a great way to explore the beautiful McCoy Creek trail system in Caribou Targhee National Forest.  A fun and comfortable option for the whole family!" (emphasis added).

41.     Defendant JHAR describes the "Teton Overlook ATV Tour" as "Our most popular tour!  This tour is ideal for *intermediate* riders and families.  It boasts the best views of the Tetons,

as well as beautiful ATV trails that wind through forested valleys and along spectacular open ridges." (emphasis added).

42.    By marketing these specific options, Defendant JHAR recognizes that it has customers of varying skill levels who participate in their commercial operations.

43.    By marketing these specific options, Defendant JHAR recognizes that not all tours are appropriate for all participants.

44.    On a map published on Defendant JHAR's website, JHAR depicts two different route options for the intermediate "Teton Overlook ATV Tour" on Shadow Mountain.



45.    The red route option is explicitly described as being for beginners (hereinafter the "Beginner Route").

46.    The Beginner Route proceeds generally in a counterclockwise direction.

47.    The Beginner Route specifically states to continue past the Intermediate/Advanced

Trail 4211.

48.     The Beginner Route does not include Trail 4211.

49.     On the same map, Defendant JHAR depicts a second route option for the "Teton Overlook ATV Tour", highlighted in yellow.

50.     This second route option includes two advanced trails, marked in yellow, numbered 4210 and 4211.

51.     The map specifically states that Trail 4211 is "steep, rutted, rocky, and off camber" and advises riders to "try them up first, not down."

52.     The descriptions of the two routes are as follows:

### Teton Overlook/ Shadow Mountain ATV Trail System

Starting at the First "P" Parking area you will head north on your machines on 30340. This is the open access forest service road that can take you all the way up and over Shadow Mountain. Please be careful as cars/trucks can also access this road. This is the easiest way to start the day and get used to the machine. All intersections are labeled with a letter and all trails are labeled with a number. At the first split in the road, a right will continue 30340 (open access road) to the top of Shadow, a left will take you into the ATV specific trail network intersections of "b" and "a".

For beginners continue up 30340 (open access road) up to the top of Shadow Mountain for great easy access views. You will notice that 65% of the way up the open access road there will be an intersection on your left hand side. It has an entrance point from both the bottom access point and top access point (think Y intersection). Coming up the road, it will be on your left. Coming down the road, it will be on your right. This is trail number 30345 and leads you to the top of the ATV specific trail network. You will notice that before you enter an ATV specific network that you will go through a 50in or less gate. They could be big boulders or fence posts. This restricts bigger machines from the trail system. At this access point you will have both fence posts and boulders. Just past the boulders on your left-hand side you will see the top of the Intermediate to Advanced Trail 4211. Continue straight. Roughly a mile and a half later you will see a trail on your right-hand side that says, "Grand View Overlook". This is a short trail that takes you to a scenic vista. Great place for lunch! This is a one way in one way out trail. Once you come back down to 4209 turn right and continue straight. The next intersection you will come to is on your left-hand side. That is the top of the advanced trail 4210. **If you are a beginner do not go left here!** Continue straight past 4210. The next intersection will be 4212 to your left and 4209 continuing straight. You can take 4212 if you want, it will bring you to the same intersection point E. From Intersection point E you will make a Left (or stay straight if you took 4212) and it will bring you towards Intersection D. Just before Intersection D on your left-hand side is a great Overlook. At Intersection D I like to take 4213 to your right. It's a fun longer loop. If you stay straight, it's a short tight trail system to Intersection C. At Intersection C prepare for a downhill rocky decent. Use 4x4 and take your time. There are some Stunning Views here! Continue down 4209 over a little 50in bridge and the trail system will lead you to intersection point B. Take a right to head back to the open access road 30340 towards your vehicle or take a left to try the intermediate and advanced trail systems 4210 or 4211.

For Advanced Riders you can start at Intersection "b" or continue straight to intersection "a". Intersection B for trail 4209 will be on your left 800 yards past the open access road junction (30340). Just past the B intersection 350 yards on your right will be 4211. Past 4211 straight ahead will be 4210. Both 4211 and 4210 have off camber steep rutted, rocky, hill climbs. They are fun but take your time and use 4x4 and the low gear if needed to make it to the top.  For the first time on these trail systems I like to attempt going up first vs. down. You can go either direction, but my suggestion would be up the first time! Please see the beginner instructions above for more details on the other trails and overlooks.

Ride Safe- Be Backcountry Aware - Make Smart Decisions - Ride in Designated Trail Systems Only - Have Fun!

53.     As part of the application for Special Use Permit #JAC463706, Defendant Walters

submitted an operating plan to the United States Forest Service.

54.     In this operating plan, Defendant Walters specified the services to be provided (guided ATV tours) and designated the specific trail systems to be utilized for these commercial operations.

55.     In this operating plan, Defendant Walters specified the Shadow Mountain trail system depicted in paragraph 44 as part of the permitted operational area.

56.     Defendant Kuznia was employed by Defendant JHAR as a tour guide.

57.     On information and belief, Defendant Walters was responsible for hiring Defendant Kuznia.

58.     On information and belief, Defendant Walters was responsible for supervising Defendant Kuznia.

59.     On information and belief, Defendant Walters was responsible for training Defendant Kuznia.

60.     On the date of the incident, Defendant Kuznia was the only guide assigned to the Liber girls' tour.

61.     Defendant Kuznia owed a duty to the participants to lead the tour in a reasonably safe manner, to assess the terrain, and to ensure the participants were capable of navigating the chosen route.

62.     At all times relevant to the events described herein, Defendant Kuznia was acting within the course and scope of his employment with Defendant JHAR.

63.     Defendants JHAR and Walters are vicariously liable for the negligent acts and omissions of Defendant Kuznia under the doctrine of *respondeat superior*.

64.     Defendants JHAR, Walters, and Kuznia owed a duty of care to Sami and the public to operate their business in a reasonably safe manner and not to increase the risks inherent to ATV riding or to expose their guests to risks that are atypical, uncharacteristic, and not intrinsic to ATV riding, including but not limited to: providing appropriate, safe, and well-maintained ATVs; hiring and training competent guides; providing adequate riding, operational, and safety instructions to

guests; assessing the skills of participants; selecting a route consistent with their guests' skills, abilities, and physical characteristics; and guiding the tour in a reasonably safe manner that avoids unnecessary perils.

### C.    Manufacturer Warnings and Directions

65.    Defendants were responsible for selecting a 2024 Can-Am Outlander as the machine for Sami to ride.

66.    At all relevant times, the 2024 Can-Am Outlander was accompanied by explicit manufacturer warnings, safety labels, and an Operator's Guide identifying the vehicle as hazardous and outlining the specific risks of collisions, crashes, and severe injury or death resulting from improper use.

67.    Defendants JHAR, Walters, and Kuznia had actual or constructive notice of these manufacturer-mandated safety protocols, which included, but were not limited to:

      a.    Prohibitions against novice operation on technical or rough terrain;

      b.    Requirements for training in a controlled environment;

      c.    Specific instructions for navigating steep descents and loose terrain; and

      d.    Mandatory use of DOT-approved protective gear.

68.    Despite having notice of the vehicle's dangerous propensities and the manufacturer's explicit instructions for minimizing those inherent risks, Defendants failed to convey these critical safety warnings to Sami or the Plaintiffs.

69.    Defendants affirmatively disregarded the manufacturer's safety mandates by leading a novice rider onto technical, excessively rough, and slippery terrain without providing the required controlled environment for practice or ensuring compliance with the manufacturer's operational instructions.

70.    The Defendants' failure to warn and their active disobedience of established safety protocols directly contradicted the manufacturer's mandates and exposed Sami to risks that are atypical, uncharacteristic, and not intrinsic to ATV riding.

### D.    Carla Liber Schedules a Tour with JHAR

71.     Prior to the scheduled tour, Carla Liber obtained JHAR's phone number from a list of reputable guides and contacted Defendant JHAR by telephone to inquire about tour availability.

72.     During this conversation, Carla Liber explicitly informed the Defendant JHAR representative that she, Ava, and Sami were beginners.

73.     In response to Carla Liber's statements that she and the girls were beginners, Defendant JHAR's agent and representative did not offer the beginner friendly "Caribou Side by Side Tour" to her.

74.     In response to Carla Liber's statements that she and the girls were beginners, Defendant JHAR's agent and representative did not describe the different options that JHAR offered.

75.     Defendant JHAR's agent and representative stated that JHAR had three free spots for an August 6, 2024, tour, and booked the family for that date.

76.     Defendant JHAR's agent and representative selected the intermediate Teton Overlook ATV Tour for the Libers.

77.     Defendant JHAR's agent and representative placed the Libers into a tour that was above their declared experience and ability levels.

**E.     Sami, Ava, and Carla Arrive at the JHAR Facility and Prepare for the Tour**

78.     On or about August 6, 2024, Sami, along with Carla and Ava Liber, arrived at Defendant JHAR's facility to participate in their scheduled guided ATV tour.

79.     When Sami, Carla, and Ava arrived at Defendant JHAR's facility, JHAR's staff did not immediately help them.

80.     At the time of their arrival, Defendant JHAR's staff was helping another family, and JHAR was inattentive to Sami, Carla, and Ava, whose reception was mostly a "hands-off" experience, lacking the proactive attention and instruction required for beginner participants.

81.     At the time of their arrival, it would have been apparent to even  a casual observer, inexperienced in ATVs, that Sami, Carla, and Ava were beginners.  Carla Liber, for example, required assistance from Defendant JHAR personnel with the basic task of properly putting on her

helmet.

82.    When Defendant JHAR's staff finally provided assistance inside of the JHAR shop, Carla Liber explicitly informed JHAR staff that Sami, Ava, and Carla were beginners and had never ridden ATVs before.

83.    While at Defendant JHAR's shop, JHAR staff focused primarily on getting paperwork completed (specifically ATV damage waivers) than explaining the trip to participants.

84.    At Defendant JHAR's shop, JHAR staff gave Sami a GMAX OF-2 open-face helmet with no face protection.

85.    Sami had no choice in what helmet to wear.

86.    An open-face helmet offers significantly less protection than full-face helmets, especially for impacts to the lower side of the head.

87.    At Defendant JHAR's shop, JHAR's staff did not instruct Sami on ATV safety; did not introduce Sami to riding an ATV; and did not explain the dangers of riding an ATV.

88.    Defendant JHAR's staff did not give any of the safety warnings listed in the manufacturer's operation manual to Sami, Carla, or Ava.

89.    Defendant JHAR's staff's two biggest concerns at the shop were how dusty riding an ATV can be and making sure that tour participants understood and signed the ATV damage waivers.

90.    Defendant Kuznia instructed the nine riders that they would be driving to the tour location by following him towing the trailer, they would stop and get sandwiches, and then meet at the beginning of the tour site at Shadow Mountain.

91.    Nine ATVs with ten riders is a large tour group for a single guide.

92.    Defendant Kuznia commented that nine riders was a large group for a single guide.

93.    On information and belief, ten ATVs is the largest number of ATVs that Defendant JHAR permits with a single guide.

94.    By limiting the size of a group based on the number riders and not the skill and ability of the riders, Defendant JHAR increased the risk that an inexperienced rider is injured.

### F.    Sami, Ava, and Carla Arrive at Shadow Mountain

95.    Upon arrival at the tour site, there were a total of nine ATVs on the trailer: five double-seaters and four single-seaters.  Defendant Kuznia unloaded the ATVs and assigned riders to them in the following order:

  a.  Defendant Kuzina assigned the "Joynes Party" to the first three double ATVs unloaded from the front of the trailer;

  b.  Defendant Kuzina assigned Sami and Ava to two single ATVs and Carla to a double machine;

  c.  Defendant Kuzina assigned the "Sharpe Party" to two single ATVs; and

  d.  Defendant Kuznia took the remaining double ATV.

96.    Defendant Kuznia determined the riding order based on the unloading process and not the riders' unique experience, ability, or characteristics.

97.    Defendant Kuznia placed the Joynes party in spots 1, 2, and 3; the Liber party (Sami, Ava, then Carla) in spots 4, 5, and 6, respectively; and the Sharpe party (Sandy then Orlando) took the tail at spots 7 and 8, respectively.

98.    Defendant Kuznia rode in the front of all riders.

99.    Riders should have been grouped or spaced based on skill and ability level.

100.    Instead, Defendant Kuznia placed Sami in the middle of the group with no direct supervision, which allowed the guide to lose visual contact with her at a critical juncture.

101.    Defendant Kuznia was the only JHAR staff at Shadow Mountain.

102.    Defendant Kuznia was the only JHAR staff responsible for providing pre-tour instruction.

103.    After establishing the rider order, Defendant Kuznia conducted a minimal safety briefing, likely lasting less than ten minutes, which focused primarily on explaining how the ATV operates.

104.    Defendant Kuznia did not instruct riders on how to remain safe while riding, did not give any warnings about potential hazards, or explain how to navigate hazards safely.

105.    Immediately following the safety and operation briefing, Defendant Kuznia had everyone drive their machines slightly forward and slightly backwards to demonstrate familiarity with the controls.

106.    Defendant Kuznia did not observe each individual participant's operation of the ATV to identify any potential issues based on inexperience.

107.    Instead, he had everyone practice this simple maneuver, on flat ground, at the same time without direct attention to individual participants.

108.    Defendant Kuznia did not assess any of the participants' riding abilities beyond this nominal amount.

109.    Given Carla's explicit disclosure of she and the girls having zero prior experience, Sami should not have been allowed to operate a full-size ATV on a technical trail without prior experience or ongoing guidance during the ride.

110.    In stark contrast to the safety briefing taking around ten minutes or less, Defendant Kuznia made the group spend significant time taking videos of each ATV and passed out clipboards for participants to sign another waiver regarding ATV damage.

111.    The purpose of this extensive documentation was to proactively address any potential damages to the ATV that might occur and to properly assess liability to the rider.

112.    This damage inspection was consistent with the JHAR staff at the JHAR shop, who were also more concerned with the ATV's condition than the safety of riders.

G.    The Tour

113.    During the course of the tour, Defendant Kuznia led the group, including Sami, onto the Shadow Mountain trail system described in the map on Defendant JHAR's website.

114.    The group left the trailhead/parking area around 11:15 AM, heading up the Forest Service road toward the ATV trails.

115.    Defendant Kuznia stopped the group at the beginning of Trail 4209 for a routine check-in.

116.    This break was to confirm the group was still together and to encourage picture

taking.

117.    After this break, the group proceeded to a scenic overlook where Defendant Kuznia moved Sami's ATV to a precarious location to stage a photo for tour participants.

118.    During this break, Carla Liber mentioned that the vibration hurt her hands, and Defendant Kuznia gave her his gloves to help.

119.    The tour then proceeded to a scenic lunch location.

120.    The path that Defendant Kuznia led the group on generally followed the reverse of the designated Beginner Route, with one notable exception: rather than heading down Forest Service Road (FSR) 30345 (designated for beginners), Defendant Kuznia led the group down Trail 4211—a trail that Defendant JHAR designated as *not for beginners*.

121.    As noted in paragraph 120, Trail 4211 is one of two trails designated for intermediate/advanced riders, and JHAR's map explicitly advises riders to "try them up first, not down."  Defendant Kuznia did the opposite.

122.    This designation was written on the map posted on Defendant JHAR's website and was known to Defendant Kuznia at the time he decided to take Sami, Ava, and Carla—all of whom were beginners—down Trail 4211.

123.    Defendant Kuznia took the group down Trail 4211 knowing that he had not taken them up the trail first and contrary to Defendant JHAR's admonition that riders should go up—not down—this trail first.

124.    The tour proceeded slowly while going uphill and along the flatter sections of the trail system.

125.    Throughout this portion, Defendant Kuznia took breaks to ensure the group was still together and communicating using hand signals to operate the ATVs correctly.

126.    The downhill portion of the tour commenced immediately after lunch and proceeded down Trail 4211.  The descent involved steep grades ranging from 17% to 22.9%, tight corners, deep ruts, loose rocks, and fine "moon dust" that significantly impaired visibility.

127.    Additionally, the tight turns made it difficult or impossible to see the person in front

of you.

128.    Although Defendant JHAR is fully aware of the dangers presented by descending Trail 4211—including its steep, narrow, and technical nature—Defendant JHAR does not appear to restrict minors or novice riders from attempting to navigate such hazardous terrain.

129.    Defendant Kuznia did not stop the group before descending Trail 4211 for targeted safety instruction.

130.    Instead, Defendant Kuznia offered only general instructions earlier in the ride and merely "reiterated" some basics before the final leg.

131.    The only specific comment regarding the downhill descent was that it would be "harder" and that they should "go slower" and gave a vague instruction about the existence of a second brake.

132.    After giving this perfunctory warning, Defendant Kuznia sped off ahead and was quickly out of sight of Sami, Ava, and Carla, never to be seen again until he returned to the scene of the crash after the fatal incident had occurred.

133.    In stark contrast to the uphill portion, Defendant Kuznia did not stop to check on the group or ensure rider safety.

**H.    The Fatal Accident**

134.    While navigating this steep downhill slope consisting of loose rocks, gravel, and ruts, Sami's ATV—a 2024 Can-Am Outlander provided by Defendant JHAR—crashed and crushed Sami.

135.    As a result of the crash, the ATV crushed Sami's skull, causing catastrophic and fatal injuries.

136.    The crash caused concentrated trauma to the left lower portion of her head—an area poorly protected by an open-face designed helmet.

137.    The specific location where the crash occurred is a designated stop where Defendant Kuznia normally pauses to take a break.

138.    However, on this occasion, Defendant Kuznia negligently chose to bypass this

safety stop solely because he said the group size was "too big," thereby forcing the inexperienced group to navigate the hazardous terrain without respite or further instruction.

139.    A stop before this section would have allowed for gear checks (e.g., downshifting to low gear), brake instruction reinforcement, hazard navigation instruction, and spacing management.

140.    Defendant Kuznia failed to properly assess the difficulty of the terrain relative to the skill level of the participants and/or failed to provide adequate warning or instruction regarding the negotiation of said terrain.

141.    Defendants increased the risk of an ATV crash by taking Sami down a trail beyond her ability level.

142.    Defendants increased the risk of harm to Sami from a crash by providing her with an open face helmet that provided no protection or deflection from her face.

143.    A full-face helmet—recommended by the ATV manufacturer—would have better protected Sami from the concentrated force on her lower skull and cheek.

144.    Ava Liber and Carla Liber did not witness the precise moment of the incident due to the winding nature of the trail and the dust.  Ava Liber was the first to arrive at the scene seconds later.  She found the ATV at rest against a tree and Sami lying on the ground nearby.

145.    Sami did not respond.  When Ava touched her sister to check on her condition, blood immediately started pooling from Sami's head, despite the fact that her helmet was still secured.  After finding Sami in this condition, Ava started screaming.

146.    Carla Liber arrived moments later and was initially confused by what was happening.  Upon seeing Sami's condition, she also started to scream.

147.    The Sharpe party arrived on the scene shortly thereafter and attempted to assist Carla and Ava in this moment of crisis.

148.    Carla Liber has no training in emergency medicine and did only what she thought would help.  She took Sami's helmet off and cradled her daughter in her arms.  Sami's eyes were open looking back at her mother.  Carla closed them.

149.    For approximately 45 to 50 minutes following the discovery of the accident, Carla Liber held her daughter, Sami, in her arms while waiting for emergency medical services (EMS) to arrive.

150.    During this time, Sami was bleeding profusely.  Blood was coming out of her mouth and nose.  Carla held her daughter's tongue to prevent her from choking.

151.    Carla and Ava desperately attempted to reach help by calling 911.

152.    Carla and Ava were only able to reach Defendant Kuznia because Carla had obtained his cell phone number to avoid separation on the way to the trailhead.

153.    When Defendant Kuznia finally returned to help, Carla asked him whether the solid pieces coming out of Sami's nose were brain matter.

154.    During this time, Ava was in a state of shock.  She was consoled by a stranger while her mother held her sister.

155.    Search and Rescue (SAR) were unable to airlift Sami from the crash site due to weather.

156.    Instead, SAR reached Sami by a side-by-side, utility task vehicle (UTV).

157.    Sami was subsequently transported down the mountain by SAR personnel.

158.    SAR transported Sami on UTV.

159.    Carla and Ava watched as Sami, who had just experienced a massive, traumatic brain injury departed on the UTV, bouncing around and causing more trauma.

160.    Carla and Ava then had to wait and get taken down.  By the time they reached the trailhead and base, Sami was already in an ambulance.

161.    At the bottom of the mountain, SAR stabilized and prepared Sami for medevac transport.

162.    Sami was flown by helicopter to Eastern Idaho Regional Medical Center in Idaho Falls, Idaho, for emergency medical treatment.

163.    Due to space limitations and safety protocols, Carla and Ava Liber were not permitted to fly in the helicopter with Sami.  Instead, they were transported by Teton County

Sheriff's deputies to Eastern Idaho Regional Medical Center.

164.    At Eastern Idaho Regional Medical Center, Plaintiff Rodney Marvin Liber met Carla and Ava.  It was determined that Sami had no brain function.  Faced with this irreversible prognosis, Rodney and Carla Liber were forced to make the agonizing decision to discontinue Sami's life support.

165.    On August 8, 2024, at 12:30 a.m., Sami was pronounced dead.

166.    As a direct and proximate result of the Defendants' actions and inactions, Sami sustained fatal injuries.

167.    Sami died as a result of a non-survivable traumatic brain injury as a consequence of an ATV accident.

## FIRST CLAIM FOR RELIEF:
## NEGLIGENCE RESULTING IN WRONGFUL DEATH
(Rodney Marvin Liber on behalf of the Estate of Samantha Rose Liber against All Defendants)

168.    Plaintiff Rodney Liber incorporates the allegations contained in Paragraphs 1 through 1-167 as though fully set forth herein.

169.    This claim is brought pursuant to the Wyoming Wrongful Death Act, Wyo. Stat. Ann. § 1-38-101, *et seq.*

170.    Rodney Marvin Liber has been legally appointed as the Wrongful Death Representative for the purpose of bringing this action.

171.    The Defendants owed a duty to Sami to conform to the standard of care for ATV tour guide operators.

172.    The Defendants owed duty to Sami not to expose her to risks that are atypical, uncharacteristic, and not intrinsic to ATV riding

173.    The Defendants breached those duties.

174.    The death of Sami was caused by the wrongful acts, neglect, or default of Defendants JHAR, Walters, and Kuznia in the operation, management, supervision, and guiding of the ATV tour.

175.    Had death not ensued, Sami would have been entitled to maintain an action and recover damages in respect thereof against Defendants.

176.    As a direct and proximate result of Defendants' negligence and the resulting death of Sami, the statutory beneficiaries have suffered, and will continue to suffer, damages including but not limited to:

        a.    Loss of probable future companionship, society, and comfort; and

        b.    Any other monetary loss sustained and proved by any of the claimants resulting from the death of the decedent, including funeral expenses and other proper charges.

177.    Plaintiff Rodney Liber is entitled to recover pecuniary and exemplary damages on behalf of the statutory beneficiaries in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF:
### NEGLIGENT ENTRUSTMENT RESULTING IN WRONGFUL DEATH
(Rodney Marvin Liber on behalf of the Estate of Samantha Rose Liber against All Defendants)

178.    Plaintiff Rodney Liber incorporates the allegations contained in Paragraphs 1 through 1-167 as though fully set forth herein.

179.    This claim is brought pursuant to the Wyoming Wrongful Death Act, Wyo. Stat. Ann. § 1-38-101, *et seq.*

180.    Rodney Marvin Liber has been legally appointed as the Wrongful Death Representative for the purpose of bringing this action.

181.    Defendants supplied the ATV for use by Sami.

182.    Defendants knew or had reason to know that because of her youth, inexperience, size, skill, and ability that she was likely to use it in a manner involving risks that are atypical, uncharacteristic, and not intrinsic to ATV riding.

183.    On information and belief, Sami was exercising reasonable care when the ATV caused her fatal injuries.

184.    As a direct and proximate result of said negligence, the statutory beneficiaries have

suffered the damages and losses as alleged in Paragraph 176 above.

185.     Plaintiff Rodney Liber is entitled to recover pecuniary and exemplary damages on behalf of the statutory beneficiaries in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF:**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
(Plaintiffs Carla Liber and Ava Liber against All Defendants)

186.     Plaintiffs Carla Liber and Ava incorporate the allegations contained in Paragraphs 1 through 1-167 as though fully set forth herein.

187.     Plaintiffs Carla Liber and Ava Liber are closely related to Sami, as her Mother and Sister, respectively.

188.     Plaintiffs Carla Liber and Ava Liber are in the category of persons who could bring, at least under some set of circumstances, a wrongful death action for Sami's death.

189.     At the time of the incident described above, Plaintiffs Carla Liber and Ava Liber were present at the scene of the injury-producing event.

190.     Plaintiffs Carla Liber and Ava Liber observed the results of the accident after its occurrence without material change in the condition and location of the victim.

191.     Although Plaintiffs did not see the ATV crash, they arrived at the scene immediately after the occurrence, before there was any material change in the condition or location of the victim.  They personally observed and perceived the immediate aftermath of the accident, including the fatal injuries and condition of Sami.

192.     As a direct result of witnessing this tragic event and its immediate aftermath, Plaintiffs Carla Liber and Ava Liber suffered severe emotional distress that is serious and compensable under Wyoming law.

193.     The emotional distress sustained by Plaintiffs is of a nature that no reasonable person could be expected to endure it.

194.     Plaintiffs Carla Liber and Ava Liber are entitled to recover pecuniary and exemplary damages in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF:
## NEGLIGENT SUPERVISION

(Rodney Marvin Liber on behalf of the Estate of Samantha Rose Liber against Defendants JHAR and Walters – Pleaded in the Alternative)

195.    Plaintiff Rodney Liber incorporates the allegations contained in Paragraphs 1 through 1-167 as though fully set forth herein.

196.    Plaintiff pleads this Count in the alternative to the claims based on vicarious liability (Respondeat Superior).

197.    To the extent it is determined that Defendant Kuznia was acting outside the course and scope of his employment at the time of the incident, Defendants JHAR and Walters are liable for their own independent negligence in failing to properly supervise Kuznia.

198.    Defendants JHAR and Walters owed a duty to Samantha Rose Liber and the public to exercise reasonable care in the supervision of their employees, including Defendant Kuznia, to ensure that tour guides followed safety protocols, adhered to authorized routes, used suitable equipment, and do not expose customers to risks that are atypical, uncharacteristic, and not intrinsic to ATV riding.

199.    Defendants JHAR and Walters knew or should have known that failing to adequately supervise tour guides regarding route selection and terrain assessment could result in significant injury or death to inexperienced riders.

200.    Defendants JHAR and Walters breached their duty of care by, among other things:

 a.    Failing to monitor or supervise Defendant Kuznia to ensure he was leading beginner groups on designated beginner trails;

 b.    Failing to enforce the restrictions and warnings contained in their own maps and operating plans, specifically regarding the dangers of Trail 4211;

 c.    Failing to ensure that Sami used appropriate equipment; and

 d.    Failing to implement adequate oversight mechanisms to prevent guides from deviating onto "Advanced" or hazardous trails with inexperienced clients.

201.    As a direct and proximate result of Defendants JHAR and Walters' negligent

supervision, Defendant Kuznia led Sami onto a hazardous trail unsuited for her skill level, resulting in the accident described herein.

202.    As a direct and proximate result of said negligence, Sami sustained fatal injuries, and the statutory beneficiaries have suffered the damages and losses as alleged in Paragraph 176 above.

203.    Plaintiff Rodney Liber is entitled to recover pecuniary and exemplary damages on behalf of the statutory beneficiaries in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF:
### NEGLIGENT TRAINING
(Rodney Marvin Liber on behalf of the Estate of Samantha Rose Liber against Defendants JHAR and Walters – Pleaded in the Alternative)

204.    Plaintiff Rodney Liber incorporates the allegations contained in Paragraphs 1 through 88 as though fully set forth herein.

205.    Plaintiff pleads this Count in the alternative to the claims based on vicarious liability (Respondeat Superior).

206.    To the extent it is determined that Defendant Kuznia's actions were the result of a lack of specific instruction rather than mere supervision, Defendants JHAR and Walters are liable for their independent negligence in failing to properly train their employee.

207.    Defendants JHAR and Walters owed a non-delegable duty to Samantha Rose Liber and the public to adequately train their tour guides, including Defendant Kuznia, in the safe operation of ATV tours. This duty included, but was not limited to, training guides on:

    a.    Properly assessing the skill levels of participants;

    b.    Selecting appropriate terrain and routes based on level of client riding experience, specifically avoiding "Advanced" or hazardous trails with beginners;

    c.    Conducting comprehensive safety briefings that cover more than just machine operation, including specific terrain hazards and emergency procedures; and

    d.    Recognizing and managing the risks associated with steep, technical, and

rutted terrain.

208.    Defendants JHAR and Walters breached this duty by failing to provide Defendant Kuznia with adequate training, instruction, or certification requirements necessary to safely guide inexperienced novices like Sami through the complex terrain of the Teton National Forest.

209.    Had Defendant Kuznia been properly trained, he would have recognized that Sami lacked the necessary skills to navigate Trail 4211, would have conducted a more thorough safety briefing, and would have selected the designated "Beginner Route" instead of the hazardous "Advanced Route."

210.    As a direct and proximate result of Defendants JHAR and Walters' negligent failure to train Defendant Kuznia, Sami was placed in a position of risk that was atypical, uncharacteristic, and not intrinsic to ATV riding peril and sustained fatal injuries as described herein.

211.    As a direct and proximate result of said negligence, the statutory beneficiaries have suffered the damages and losses as alleged in Paragraph 176 above.

212.    Plaintiff Rodney Liber is entitled to recover pecuniary and exemplary damages on behalf of the statutory beneficiaries in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF:
### NEGLIGENT NONDISCLOSURE
(Rodney Marvin Liber on behalf of the Estate of Samantha Rose Liber against All Defendants)

213.    Plaintiff Rodney Liber incorporates the allegations contained in Paragraphs 1 through 1-167 as though fully set forth herein.

214.    This claim is brought pursuant to the Wyoming Wrongful Death Act, Wyo. Stat. Ann. § 1-38-101, *et seq.*, and relies upon the principles set forth in the Restatement (Second) of Torts § 551.

215.    At all times relevant hereto, Plaintiffs and Defendants were parties to a business transaction wherein Plaintiffs purchased, and Defendants sold, a commercial guided ATV tour service.

216.    In the course of this business transaction, Defendants owed a duty to Sami and the

Plaintiffs to exercise reasonable care to disclose facts basic to the transaction, specifically regarding the safety, difficulty, and route of the tour, because:

   a. Defendants knew that Sami and her family were entering into the transaction under the mistaken belief that the tour would be "beginner friendly" and safe for novices;

   b. Defendants knew that, because of the relationship between a commercial outfitter and a novice customer, Plaintiffs would reasonably expect a disclosure of any known hazards that significantly increased the risk of the activity; and

   c. Disclosure was necessary to prevent Defendants' partial and ambiguous statements—such as advertising "beginner friendly" tours and failing to mention the "Advanced" designation of the chosen route—from being misleading.

217.    Defendants possessed superior knowledge regarding the specific hazards of the terrain, which was not within the fair and reasonable reach of the Plaintiffs. Specifically, Defendants knew, but failed to disclose to Sami or the Plaintiffs, the following material facts:

   a. That the tour would deviate from the designated "Beginner Route" and instead traverse Trail 4211;

   b. That Trail 4211 was designated as an "Advanced" trail, suitable only for intermediate or advanced riders;

   c. That Defendants' own internal or published maps described Trail 4211 as "steep, rutted, rocky, and off camber" and explicitly advised riders to "try them up first, not down";

   d. That the specific descent where the accident occurred involved steep grades ranging from 17% to 22.9%, deep ruts, and "moon dust" that severely impaired visibility; and

   e. That an open-face helmet, such as the one provided to Sami, offered inadequate protection for the specific technical hazards present on Trail 4211.

218.    Defendants knew that these undisclosed facts were basic to the transaction and that if Sami and the Plaintiffs had known of the extreme hazards and the "Advanced" nature of the trail, they would not have entered into the transaction or would have refused to proceed down Trail 4211.

219.    Defendants' failure to disclose these material facts induced Sami and the Plaintiffs to participate in the tour and to attempt the hazardous descent of Trail 4211, acting in justifiable reliance on the Defendants' silence and the implied representation that the route was safe for beginners.

220.    As a direct and proximate result of Defendants' negligent nondisclosure, Sami was placed in a position of risk that was atypical, uncharacteristic, and not intrinsic to ATV riding peril for which she was unprepared, resulting in the ATV crash and her fatal injuries.

221.    As a direct and proximate result of said negligence, the statutory beneficiaries have suffered the damages and losses as alleged in Paragraph 176 above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

A.    For compensatory damages in an amount to be determined at trial, but in excess of the jurisdictional minimum of this Court;

B.    For past and future economic damages;

C.    For past and future non-economic damages, including loss of companionship, society, comfort, and mental anguish;

D.    For funeral and burial expenses;

E.    For pre-judgment and post-judgment interest as allowed by law;

F.    For costs of suit incurred herein; and

G.    For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury in Cheyenne, Wyoming on all issues so triable.

DATED this 17th day of February, 2026.

Respectfully submitted,

/s/ *Douglas J. Richards*

Douglas Richards [Attorney Reg. #8-1725]
Richards Carrington LLC
1444 Blake Street
Denver, Colorado 80202
303-962-2620
doug@richardscarrington.com

Daniel J. Vedra
Vedra Law LLC
1444 Blake Street
Denver, Colorado 80202
Dan@vedralaw.com
(Pro hac vice admission to be sought)
*Attorneys for Plaintiffs*